United States Bankruptcy Court
Northern District of Illinois
Eastern Division

| | |
|---|---|
| In re:<br><br>PREMSAGAR MULKANOOR,<br><br>                      Debtor. | Chapter 11<br><br>Bankruptcy No. 17 BK 18799<br><br>Honorable Judge Jack B. Schmetterer |
| PREMSAGAR MULKANOOR,<br><br>                      Plaintiff<br><br>v.<br><br>THE CITY OF HARVEY,<br><br>                      Defendant. | Adversary No. 17 AP 00388 |

**MEMORANDUM OPINION ON DEFENDANT'S MOTION TO DISMISS [DKT. NO. 22]**

Defendant, the City of Harvey, Illinois ("Defendant" or "the City") moved to dismiss the Second Amended Complaint filed by Plaintiff Premsagar Mulkanoor ("Plaintiff" or "Mulkanoor") pursuant to Fed. R. Civ. P. 12(b)(6), made applicable by Fed. R. Bankr. P. 7012(b).

For reasons discussed below, Defendant's Motion to Dismiss is granted as to each Count, with prejudice, by separate order entered this date, and judgment is entered for Defendant.

## INTRODUCTION

Plaintiff is an individual debtor who has developed and owns several pieces of property, including the property underlying the subject adversary proceeding, a Marathon Gas Station and Minimart Convenience Store Facility located at 16643 S. Halsted Street, Harvey, Illinois 60426 ("Gas Station"). Plaintiff filed his petition for Chapter 11 bankruptcy relief on June 21, 2017. The instant adversary proceeding was filed on July 26, 2017.

Plaintiff alleges that he is owed $250,000.00, plus interest, costs, and attorney's fees on TIF reimbursement funds that were allegedly promised, but never issued to him by the City. In his Second Amended Complaint, Plaintiff pleads two counts. First, he seeks to enforce what he considers vested property rights. He states that in good faith reliance on certain ordinances, he developed his gas station and followed all instructions by the City to get his TIF reimbursement. He seeks to enforce a City Ordinance and its Resolution No. 1850 in order to receive the TIF

1

payments allegedly due. Second, Debtor alternatively pleads equitable and promissory estoppel, arguing that he justifiably relied upon the Ordinance and Resolution and expended $750,000.00 in construction expenses. Again, Plaintiff also seeks to recover the $250,000.00 TIF reimbursement plus costs, interest, and attorney's fees.

## BACKGROUND FACTS ALLEGED

On April 17, 1995, the City adopted and approved three ordinances, Ordinance No. 2923, Ordinance No. 2924 and Ordinance No. 2925, to implement a plan designating approximately 259 acres of Harvey as a "TIF District" or a "Redevelopment Project Area," using Tax Increment Allocation Financing. Sometime in March 1999, Plaintiff and his now-deceased wife applied for TIF financing from the City in order to construct a Gas Station. Plaintiff sent his TIF application and a check for $1,500.00 dated March 25, 1999 to the City. On March 26, 1999, J. David Dillner, then the Corporate Counsel for the City of Harvey, sent Plaintiff a letter acknowledging the receipt of his TIF application. On April 26, 1999 the City approved Resolution No. 1850, which states in relevant part:

> "WHEREAS, MULKANOOR will only construct the building contingent on getting approval of the City of Harvey to approve tax increment financing assistance . . ."

(Second Amended Complaint, Exh. D). The requisite approval was not received, but Plaintiff received a construction loan from Mutual Bank on September 10, 1999 for $350,000.00 and began construction on the Gas Station after receiving the loan.

On May 3, 2000, Corporate Counsel Dillner mailed Plaintiff a copy of a document titled "Redevelopment Agreement Pertaining to Redevelopment of Site No. 6," referencing the location of the proposed Gas Station ("Redevelopment Agreement" or "Agreement"). Plaintiff's attorney reviewed the document and mailed it to Plaintiff for approval on May 22, 2000. Plaintiff alleges that he approved the Agreement. He further alleges that in June 2000, the City Council and Mayor approved the Redevelopment Agreement. The City contests this allegation, asserting that Plaintiff never received the required City approval as evidenced by the fact that the Redevelopment Agreement attached to Plaintiff's Second Amended Complaint is unsigned by both parties. Plaintiff states that he expended $750,000.00 on the construction of the gas station, though he does not indicate when the project was completed.

Over thirteen years later, in the Spring of 2013, Plaintiff sent a request to the City requesting reimbursement based on the Redevelopment Agreement and his application for TIF

2

funds. On April 30, 2013, LaTonya Rufus, Director of Planning for the City of Harvey, sent a letter to Plaintiff acknowledging that the Economic Development City Council Committee had reviewed his application for TIF reimbursement, but requested additional documents detailing construction costs, the total cost of the build out, development expenses, and any increments paid into TIF since beginning of the development. Plaintiff states that he timely tendered all of those requested documents.

On October 27, 2014, Plaintiff sent a letter repeating his request for TIF funds to Eric J. Kellogg, Mayor of the City of Harvey. Plaintiff states that shortly after sending this letter, he received notice from the City indicating that the new City administration "had nothing to do with his claim," and a request that he resubmit his TIF reimbursement package. He submitted the package but heard nothing thereafter from the City of Harvey.

Plaintiff retained counsel for a meeting with the City of Harvey on October 6, 2015. He met with Rufus and an attorney for the City wherein the City officials indicated that they had lost his TIF reimbursement package, and that the City could not confirm that Plaintiff had been involved in the TIF program because records from the previous administration could not be located. They requested that Plaintiff resubmit the TIF package for a third time. Plaintiff mailed the TIF reimbursement package to Rufus via US Postal Service Priority Mail Express on January 11, 2016, and Rufus signed for the package on January 22, 2016 at 11:00 a.m.

Plaintiff alleged that after a few weeks had gone by, he received a call from the City in which a representative stated that more time would be required to review his TIF package. The City and Plaintiff have not been in contact since that call. Subsequently, on July 26, 2017, Plaintiff filed his petition for Chapter 11 bankruptcy relief.

Plaintiff filed his original suit in an Illinois state court on July 26, 2017. That case was removed from state court to the bankruptcy court, and the Plaintiff's Amended Complaint accompanied the notice of removal. In the Amended Complaint, Plaintiff alleged that the City breached its contract with him and alternatively argued that a theory of *quantum meruit*, arguing that the City would be unjustly enriched if it were allowed to accept the Redevelopment Agreement without complying with its obligations under the document. The City filed its Answer to the Amended Complaint on September 4, 2017. The City denied that the Ordinance and Resolution No. 1850 by themselves allowed Plaintiff to receive TIF reimbursement, denied

that the Redevelopment Agreement was ever executed by the parties, and denied that any unjust enrichment occurred pursuant to the Redevelopment Agreement.

On November 2, 2017, Plaintiff filed his Second Amended Complaint alleging enforcement of vested property rights, or alternatively, equitable and promissory estoppel, and seeking to recover the $250,000.00 in TIF reimbursement funds he believes he is owed pursuant to the Redevelopment Agreement and Ordinance and Resolution No. 1850, plus interest and costs.

On February 20, 2018, the parties filed a Joint Stipulation consenting to the entry of final judgment by the bankruptcy judge.

## MOTION TO DISMISS

Defendant, the City of Harvey, filed its Motion to Dismiss on November 28, 2017. The City argues that in order to compel it to perform a nondiscretionary distribution of funds (what it describes as a Mandamus complaint), Plaintiff must show that he is clearly entitled to relief and that the city is clearly required to act, citing *Cebertowicz v. Madigan*, 2016 IL App (4th) 140917 ¶ 15. Defendant states that Plaintiff has not met this burden because the Agreement he attached to the complaint is unsigned by both parties, and the ordinance clearly stated that TIF reimbursement was contingent upon approval of the City of Harvey. Defendant argues that because the document attached to Plaintiff's complaint is unsigned, that exhibit controls, and Plaintiff has not proven that he has an unequivocal right to relief as result, citing *N. Ind. Gun & Outdoor Shows v. City of S. Bend*, 163 F.3d 449, 454-55 (7th Cir. 1998). As such, the necessary contingent act of getting the City's approval could not have occurred and Plaintiff is not entitled to relief. Furthermore, City states that Plaintiff would only be due TIF funds based on an "increase in the current equalized assessed valuation," of the property. Defendant argues that Plaintiff has failed to plead that the $750,000.00 he expended in redevelopment costs have attributed to the increase in that current equalized value over and above the initial equalized value of the property, and thus, Plaintiff is not entitled to any TIF reimbursement as he has not shown an increase.

Plaintiff filed his Response to the Motion on January 11, 2018. Plaintiff argues that he has successfully met the pleading standards such that he has informed Defendant of what the claim is and grounds upon which it rests citing *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). Furthermore, Plaintiff argues that this is not a Mandamus

complaint, as Illinois law allows individuals to sue municipal governments for promissory or equitable estoppel, or under contractual and quasi-contractual theories, citing *Solomon v. City of Evanston*, 29 Ill. App. 3d 782, 792 (1975). Plaintiff further contends that on a Motion to Dismiss all well-pleaded facts must be viewed in his favor, and thus the Court must accept as true his assertion that the City of Harvey has a contract in its possession signed and executed by both parties. Additionally, Plaintiff pleads that in June 2000, the City Council approved the Redevelopment Agreement, though he does not detail how or when this approval was given. Plaintiff also alleges that Resolution No. 1850 by itself provides him with a quasi-contractual right against the City because the City's assertion that TIF funding was contingent only appears in the introductory "Whereas" clauses, and that after the words "be it resolved" the City made an unequivocal promise to reimburse Plaintiff. Finally, Plaintiff argues that the formula for calculation of damages does not undercut the allegations in his Complaint because it is only regarding the measure of damages, which the City may raise as a defense in its Answer to the Complaint.

Defendant filed its Reply on January 31, 2018. With regards to Count I, Defendant reiterates its assertion that Plaintiff's Complaint is a Mandamus action that must be dismissed for failure to properly plead that he is entitled to relief. Furthermore, Defendant argues again that it need only pay TIF funds if the property taxes paid based upon the equalized value of the property have been increased by development on the property, and Plaintiff has not alleged that any such increase in property tax value has occurred. Defendant does not directly address Plaintiff's argument that the contingent language only appears in the introductory statements, but reiterates that the contingency language is binding and precludes any TIF reimbursement without approval of the City. Plaintiff also asserts that the unsigned Redevelopment Agreement attached to the Second Amended Complaint is clearly contradictory to Plaintiff's position that it secured the City's approval. With regards to Count II, Defendant states that promissory and equitable estoppel fail because Plaintiff has not alleged an affirmative act or unambiguous promise by the City. Due to the contingent language in the resolution, Defendant argues that Plaintiff was not entitled to anything and the City was not bound to do anything. Thus, no affirmative act took place on the part of the City. The unexecuted agreement attached to Plaintiff's complaint further belie his argument because only the City's corporate authorities have the power to bind the municipality to a contract, and that contract must be approved by a resolution.

## JURISDICTION AND VENUE

Subject matter jurisdiction lies under 28 U.S.C. § 1334. Subject matter jurisdiction lies under 28 U.S.C. § 1334. The district court may refer cases arising under title 11 to a bankruptcy judge under 28 U.S.C. § 157, and this matter is referred here by District Court Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue lies under 28 U.S.C. § 1409. This is a non-core proceeding over which the bankruptcy court has related jurisdiction, pursuant to 28 U.S.C. § 1334(b), but the parties agreed that the bankruptcy judge may enter a final judgment.

## DISCUSSION

In order to survive a Motion to Dismiss for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6), the complaint must clear two hurdles. First, it must give "fair notice of what . . . the claim is and the grounds upon which it rests." *E.E.O.C. v. Concentra Health Servs.*, Inc., 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). Second, it must, "plausibly suggest that the Plaintiff has a right to relief, raising that possibility above a 'speculative level'." *Id.* Failure to comply with either of these requirements means that the plaintiff has plead himself out of court. *Id.*

The parties discuss two issues in the Motion to Dismiss and subsequent responses.

First, whether Plaintiff is entitled to relief under his theory of vested property rights pursuant to Ordinances and Resolution No. 1850 and the Redevelopment Agreement. In connection with this issue, Defendant also raises the question of whether Plaintiff's suit is a petition for a writ of mandamus, and if so, whether Plaintiff has met the necessary burden to bring such a suit against the City in the first place.

And second, whether Plaintiff is entitled to relief pursuant to his alternative theories of equitable and promissory estoppel. Plaintiff and Defendant also discuss the correct method of calculation for any TIF reimbursement to Plaintiff, and whether that methodology impacts Plaintiff's right to relief. Each of these issues is discussed below.

### I. If Plaintiff's Suit Seek a Writ of Mandamus, He has Not Met the Requirements Pursuant to Illinois Law

In Illinois a writ of mandamus is an "extraordinary remedy used to compel a public officer to perform nondiscretionary official duties." Cerbertowicz v. Madigan, 2016 IL App (4th)

140917, ¶ 15 (quoting *People ex rel. Senko v. Meersman*, 2012 IL 114163, ¶ 9). In order to seek a writ of mandamus, a complaint must, "allege facts which establish a clear right to the relief requested, a clear duty of the respondent to act, and clear authority in the respondent to comply with the writ." *Noyola v. Board of Education of the City of Chicago*, 179 Ill.2d 121, 133 (1997). The petitioner seeking a writ of mandamus, "has the burden of establishing every material fact necessary to show the plain duty of the respondent before a court will interfere." *Bremen Cmty. High Sch. Dist. No. 228 v. Cook Cty. Comm'n on Human Rights*, 2012 IL App (1st) 112177, ¶ 15.

Plaintiff in the instant adversary proceeding seeks to compel the City to disburse TIF reimbursement funds claimed to be owed. To show that he is owed this money, Plaintiff asserts that Ordinance and Resolution No. 1850 passed by the City Council and the Redevelopment Agreement, which he alleges was approved by the City Council some time in June 2000, created a clear, nondiscretionary duty on the part of the City's officials. Therefore, Plaintiff's action may arguably be considered a petition for a writ of mandamus, as he seeks to compel the City to disburse TIF reimbursement funds, as it is allegedly required to do so by Ordinance and Resolution, and also by contract.

Plaintiff argues that Defendant's characterization of his complaint as a petition for a writ of mandamus is incorrect. Rather, Plaintiff states that he is seeking relief only under theories of equitable and promissory estoppel, or under quasi-contractual theories, neither of which are equivalent to a petition for writ of mandamus under Illinois case law. *Solomon v. City of Evanston*, 29 Ill. App. 3d 782, 792 (1975) (discussing the nature and requirements of a mandamus action under Illinois law as well as invoking the doctrine of estoppel against a municipality, which are considered separate actions in Illinois); *Boswell v. City of Chicago*, 2016 IL App (1st) 150871, ¶ 31 (stating that while estoppel against public bodies is generally disfavored, such actions may be brought to prevent fraud or injustice).

While Plaintiff's complaint pleads counts under theories seeking enforcement of vested property rights and estoppel, the relief sought and the facts alleged supporting the basis for that relief appear to overlap significantly with those required to seek a writ of mandamus in Illinois. The City addresses the issue quite thoroughly in its Response and Reply. Thus, it is necessary to at least address the issue of whether Plaintiff is entitled to a writ of mandamus, even if Plaintiff is not explicitly seeking one.

7

As the *Noyola* court noted, a complaint must show that the petitioner has a clear right to relief, and that a public officer or municipal entity has a clear duty to act and would have a clear authority to comply with the writ. *Noyola*, 179 Ill.2d at 133. Even when viewed in the light most favorable to the non-moving party, Plaintiff has not clearly established any of the required elements for mandamus under Illinois law.

The language of Ordinance and Resolution No. 1850 clearly states that Mulkanoor, "will only construct the building contingent on getting approval of the City of Harvey to approve tax increment financing assistance." That language is unambiguous. It does not create a clear right to recovery for the Plaintiff, nor does it evidence a clear duty to act on the part of the City or its officials, until there would be an approved contract by the City.

While Plaintiff asserts that the Redevelopment Agreement was approved sometime in June 2000, he does not explain when or how this approval came to be. The argument that a copy of the Redevelopment Agreement, signed by both parties, exists somewhere to be discovered prior to trial is likewise unpersuasive. Plaintiff has not articulated any facts leading to the conclusion that the Redevelopment Agreement was approved, nor that a signed copy exists, other than to say that court must make these inferences in his favor based upon his unsupported assertions. However, though the Court must take the complaint's factual allegations as true, "'[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice.'" *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Plaintiff's basis for his assertion that he is entitled to relief and the City has a clear duty to act is clearly threadbare.

Moreover, the Supreme Court has held that to survive a motion to dismiss, a complaint must state claims supported by details which are plausible upon their face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The argument that the Redevelopment Agreement was approved by the City and that a copy signed by both parties exists somewhere is conclusory and unsupported by any accompanying facts. Plaintiff has not alleged anything that makes these assertions at all plausible. Plaintiff has not alleged, for instance, that he witnessed an agent of the City signing the Redevelopment Agreement, or that an agent of the City told him that it was signed, which would have served as some proof that the City had intended to bind itself to the contract's terms.

8

Nor has Plaintiff alleged that he requested or received a copy of the signed and approved Redevelopment Agreement, which would be typical of a party to a contract. Plaintiff has not even plead facts tending to show that the City's behavior was somehow in accordance with terms of the Redevelopment Agreement. Nothing Plaintiff has alleged allows this Court to make a reasonable inference that the Redevelopment Agreement was signed by the City. Therefore the allegation of a signing is not at all plausible.

Furthermore, the fact that Plaintiff apparently waited thirteen years, between the date he alleges the City approved the contract in June 2000 and the date he requested reimbursement in 2013, is troubling. Plaintiff, if he had asked for a signed copy of the Redevelopment Agreement earlier, may have avoided the expense of building the Gas Station with no guarantee of being reimbursed from TIF funds. Instead, he chose to recklessly rely on his own interpretation of Ordinance and Resolution No. 1850 and an alleged approval of the Redevelopment Agreement in June 2000, which is unsupported by any alleged facts. Plaintiff is not entitled to relief simply because he acted recklessly in building the Gas Station with no concrete assurance that he would be reimbursed. And Plaintiff's allegations, even when viewed in the light most favorable to him, do not amount to a claim, plausible on its face, that the Redevelopment Agreement was signed by the City. The Court cannot reasonably infer from the facts alleged that a signed copy of the Redevelopment Agreement exists at all, and allowing Plaintiff to conduct discovery to find such an alleged, signed copy would amount to nothing more than a fishing expedition. Where a request for discovery is based on nothing more than mere speculation, a court may deny the request. *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 801 F.3d 758, 766 (7th Cir. 2015).

Should Plaintiff's complaint seek relief in the form of a writ of mandamus, such relief is thereby denied and his complaint dismissed. However, Plaintiff does not expressly request a writ of mandamus, so his pleading must be treated on alternative grounds pleaded.

## II. Plaintiff is Not Entitled to Relief Under His Theory of Enforcement of Vested Property Rights and Count I is Dismissed with Prejudice

Plaintiff argues in his pleadings that the City's passage of Ordinance and Resolution No. 1850 and the alleged approval of the Redevelopment Agreement vests contractual or quasi-contractual rights in him upon which he may sue. While Plaintiff is correct that in Illinois, a

9

municipality and its officers may be sued under contractual and quasi-contractual theories without recourse to a mandamus action, he is still not entitled to relief under either of those theories. *Boswell v. City of Chicago*, 2016 IL App (1st) 150871, ¶ 18. In order to state a breach of contract claim, the plaintiff must plead, "(i) the existence of a valid contract; (ii) he performed the contract; (iii) the City breached the contract; and (iv) damages as a result." *Id.* Plaintiff has failed on the very first element, as he has not shown that a valid contract exists.

As discussed above, Plaintiff's argument that the Redevelopment Agreement was approved by the City and that a signed copy of the contract is in the City's possession awaiting discovery prior to trial is wholly unsupported by accompanying facts. These mere conclusory allegations do not serve as a plausible showing of a valid contract.

Alternatively, Plaintiff argues in his Response that Ordinance and Resolution No. 1850 has created a quasi-contractual right upon which he is also entitled to relief. In support of this position, cites *Boswell v. City of Chicago*, 2016 IL App (1st) 150871 extensively for the premise that even when a signed contract between a plaintiff and municipality does not exist, an ordinance may serve as evidence that a contract was intended between the parties. As a preliminary matter, however, it is important to note that the *Boswell* opinion also explicitly stated that a presumption exists that passage of an ordinance does not automatically show intent to create private contractual rights, but simply articulates policy goals to be pursued. *Id.* at 19.

Moreover, the facts in *Boswell* differ greatly from those in the case at bar. In *Boswell*, the ordinance in question contained language specific to the plaintiff's employment and rights as an employee of the City of Chicago. *Id.* at 21. It explained that as "executive director of compliance," the plaintiff could be removed by the mayor for cause and would have the opportunity to be represented by counsel and be heard by the city council. *Id.* The court in *Boswell* held that the plaintiff had overcome the presumption against creation of the contract on the grounds the language of the ordinance, which referenced only one specific employee, along with oral promises made during the hiring process, supported the conclusion that the City intended to create a contract with him. *Id.* at 21-29.

The facts of *Boswell* were clearly not analogous to those in the matter at hand. That case dealt with ambiguous language in an ordinance creating and articulating rights of a particular job with the City of Chicago. Ordinance and Resolution No. 1850, at issue here, deals specifically with the Plaintiff, but the relevant language is inarguably contingent. Only upon subsequent

10

approval by the City would Plaintiff be entitled to TIF reimbursement funds. Plaintiff's assertion that the Redevelopment Agreement was approved and signed some time in June 2000 is a mere unsupported assertion. Illinois courts have consistently rejected claims that ordinances formed contracts in cases where the ordinances "seem only to express some of the purposes and goals" of a municipality or governmental department and "announce various policies" that they may seek to implement. *Unterschuetz v. City of Chicago*, 346 Ill. App. 3d 65, 72-73 (2004) (holding that an ordinance regarding power of personnel department did not constitute a contract regarding merit employment without granting specific rights to an employee); *Dopkeen v. Whitaker*, 399 Ill. App. 3d 682, 688 (2010) (holding that a former state employee did not have a contract because the ordinance did not describe any specific employee rights or any disciplinary information with regards to that employee's acceptance and continuation of work).

Plaintiff also makes the argument that the contingent language is only contained within the "introductory 'Whereas'" clause of the Ordinance and should not be read to have any effect. Rather, Plaintiff argues that the operative portion of the Ordinance states, "Now, therefore Be it resolved . . . the City will give assistance in such sums and such amounts as are deemed feasible." (Complaint, Exh. D.) However, Plaintiff has provided no authority for his conclusion that the introductory portion of Ordinance and Resolution No. 1850 should be read as non-binding. Nor does he articulate any other reason why that portion of the Ordinance and Resolution was non-binding. Furthermore, Plaintiff's assertion that the portion of the Ordinance and Resolution he references binds the City to provide TIF reimbursement funds is unsupported by the language of the Ordinance showing the need for future agreement. Those sections of Ordinance and Resolution No. 1850 read in whole:

> SECTION I: The City *will review any and all redevelopment proposals submitted by MULKANOOR* and encourages MULKANOOR to proceed with its construction in the City of Harvey,
> SECTION II: The City will give assistance in such sums and amounts as are *deemed feasible to its satisfaction* and within the confines of the tax increment financing statute of the State of Illinois.

(Emphasis added). Neither of these sections contradicts the contingency language referenced earlier in the Ordinance and Resolution as Plaintiff seems to suggest. Rather, they reinforce the notion that the City had a great deal of discretion as to whether such a redevelopment proposal would be approved and, if so, what amount of TIF reimbursement would be issued based on the approved contract. Reading these passages as an uncontingent promise, as Plaintiff suggests, not

11

only goes against the plain language of the Ordinance and Resolution in these particular sections, but also ignores the contingent language discussed earlier. Contrary to what Plaintiff argues, such a reading will not take account of the Ordinance and Resolution as a whole. Thus, because Plaintiff has not overcome presumption that Ordinance and Resolution No. 1850 did not intend to create a contract, he cannot assert that a valid contract had been created by the Ordinance alone. As such, Plaintiff's effort to enforce vested rights based upon a theory of contractual and quasi-contractual rights fails. Count I will be dismissed with prejudice by separate order to be entered concurrently herewith.

### III. Plaintiff is Not Entitled to Relief Under His Theory of Equitable and Promissory Estoppel and Count II is Dismissed with Prejudice

Plaintiff alternatively argues in Count II of his complaint that he is entitled to relief under a theory of equitable and promissory estoppel. Once again, Plaintiff is correct that in Illinois a municipality and its officers may be sued under estoppel theories separate and apart from a petition seeking a writ of mandamus. *Solomon v. City of Evanston*, 29 Ill. App. 3d 782, 792 (1975). A plaintiff may invoke the doctrine of estoppel when his action, "was induced by the conduct of municipal officers, and where in the absence of such relief he would suffer a substantial loss and the municipality would be permitted to stultify itself by retracting what is [sic] agents had done." *Id*. Thus, pursuant to Illinois precedent, "[t]wo essential elements of such an estoppel doctrine are an affirmative act on the part of the city itself and that the affirmative act induced the complained-of action." *Id*. However, Plaintiff is not entitled to relief under his theory of estoppel because he has failed to allege an affirmative act on the part of the city or an unambiguous promise necessary to plead promissory estoppel.

As discussed above, the language of Ordinance and Resolution No. 1850 was clearly contingent, and not an unambiguous promise to pay TIF reimbursement funds. Even assuming, *arguendo*, that Plaintiff's interpretation of the Ordinance and Resolution had arguable merit, that would only mean that the two viable, competing analyses (which reach opposite conclusions about whether the Ordinance and Resolution was a contingent promise or an unequivocal promise) of Ordinance and Resolution No. 1850 would be presented. That would not show an unambiguous promise, as required by Illinois precedent. Likewise, the Ordinance and Resolution

is also not an affirmative act on the part of the city. It merely expresses the possibility that the City will look to enact certain policies. It did not grant the Plaintiff any rights.

In *Solomon*, an Illinois Appellate Court reached a similar conclusion. In that case, the plaintiff argued that the letter sent by the Director of Inspections and Permits of the City of Evanston constituted an affirmative act and unambiguous promise. *Id.* at 792-793. The court held that the letter did not constitute an affirmative act on the part of the City because plaintiff was not given any rights and the letter did not commit the City to any plan of action. *Id.* at 793. Facts in the instant case are analogous. The "affirmative act" alleged by the Plaintiff was the passage of Ordinance and Resolution No. 1850. Given the contingent nature of the language discussed at length above, it cannot be said that plaintiff was given any clear rights and it certainly cannot be said that the City committed to any plan of action, given that it then required a future contract to be signed. Plaintiff states in his complaint that he "justifiably relied" upon the Ordinance and Resolution when he began to build the Gas Station. However, the affirmative act required in this case was not the passage of the Ordinance and Resolution containing the contingent language. The necessary affirmative act would have been the execution and approval of the Redevelopment Agreement. As discussed above, Plaintiff has not shown that the contract was approved and signed by City officials. Thus, because Plaintiff has failed to allege sufficiently an affirmative act on the part of the City upon which he relied, he is not entitled to relief under his theories of equitable and promissory estoppel. Therefore, Count II of Plaintiff's Second Amended Complaint will be dismissed with prejudice by separate order to be entered concurrently herewith.

## CONCLUSION

Plaintiff has now had three opportunities to draft his Complaint, both here and in Illinois state court. For the foregoing reasons, Defendant's Motion to Dismiss will be granted and

Plaintiff's Second Amended Complaint will be entirely dismissed with prejudice by separate order to be entered concurrently herewith, and judgment will be entered for Defendant.[1]

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 21 day of March, 2018

---

[1] Defendant in its Response makes the ancillary argument that pursuant to the Tax Increment Allocation Redevelopment Act, 65 ILCS 5/Art. 11, Div. 74.4, adopted by the City in Ordinance No. 2925, payment is only required of redevelopment costs by the City with a "portion, if any, of such taxes which is attributable to the increase in the current equalized assessed valuation of each lot, block, tract or parcel of real property in the Redevelopment Project Area, over and above the initial equalized assessed value." (Def.'s Reply., Exh. B.) Defendant argues that because Plaintiff failed to allege any new property taxes generated by the incremental increases in the value of the properties, he is not entitled to any TIF funds. Plaintiff conversely argues in his Response that such a calculation is irrelevant at this stage because it only speaks to the measure of damages, not the Plaintiff's two counts seeking relief, and that such a defense should be raised in an Answer to the Second Amended Complaint.
    Given that this Court has decided that Plaintiff is not entitled to relief under any of the theories presented in his Second Amended Complaint as articulated above, the Court need not address the question of whether Defendant's argument about the calculation of TIF reimbursement funds would have been better raised in an Answer.